```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JULIUS C. BAILEY,

                    Plaintiff,            MEMORANDUM & ORDER
                                          09-CV-0839(JS)(ETB)
     - against -

HUNTINGTON HEBREW CONGREGATION d/b/a
HUNTINGTON JEWISH CENTER,

                    Defendant.

----------------------------------------X
APPEARANCES:
For Plaintiff:      Julius C. Bailey, pro se
                    120 Columbia Street
                    Huntington Station, NY 11746-1220

For Defendant:      Danielle M. Dandrige, Esq.
                    Rhonda L. Epstein, Esq.
                    Hoey King Toker & Epstein
                    55 Water Street, 28th Floor
                    New York, NY 10041
```

SEYBERT, District Judge:

In this employment discrimination case, plaintiff pro se Julius Bailey ("Plaintiff") sued Defendant Huntington Hebrew Congregation ("Defendant" or the "Synagogue") for alleged violations of Title VII of the Civil Rights Act ("Title VII"). Pending before the Court is the Synagogue's motion for summary judgment. For the reasons that follow, that motion is GRANTED.

BACKGROUND

Plaintiff did not serve a Local Civil Rule 56.1 counter-statement or oppose Defendant's motion. The Court therefore takes as true the facts contained in Defendant's Local

Rule 56.1 Statement that are supported by admissible evidence. See LOCAL CIV. R. 56.1(c); Baker v. Dorfman, 239 F.3d 415, 422 (2d Cir. 2000); Marshall v. Marshall, No. 08-CV-1420, 2010 WL 5477753, at *1 n.1 (E.D.N.Y. Dec. 7, 2010) (Report and Recommendation) adopted 2010 WL 5477152 (E.D.N.Y. Dec. 30, 2010).

Plaintiff, an African-American male, began working at the Synagogue as a custodian on March 29, 2007 and was eventually assigned a 40-hour work week on the 3 p.m. to 11 p.m. shift. (Def. 56.1 Stmt. ¶¶ 10, 18.) Among other things, Plaintiff was responsible for mopping, vacuuming, cleaning bathrooms and arranging classroom and meeting room chairs. (Id. ¶ 20.) In addition to these duties, Plaintiff was also required to help strip and wax the Synagogue's floors as part of a refurbishment project that was ongoing when Plaintiff was hired. (Id. ¶¶ 20-21.)

Soon after Plaintiff was hired, Plaintiff's supervisor, head custodian Alberto Caballaro, complained to the Synagogue's President, Cheryl Silberman, that Plaintiff spent inordinate amounts of time socializing with the congregants instead of working. (Id. ¶ 22.). Ms. Silberman personally observed Plaintiff socializing with congregants instead of

working.  (Id.)  She also learned that Plaintiff would try to pass his assignments off on his colleagues, which in her view caused resentment among the custodial staff and undermined Mr. Caballaro's authority.  (Def. 56.1 Stmt. ¶ 23; Silberman Aff. ¶ 14.)  Most troubling to Defendant, though, was Plaintiff's accrual of excessive overtime and his habit of remaining in the building well past the time at which everyone else had left (including more than one instance where Plaintiff stayed until 3:00 a.m.).  (Def. 56.1 Stmt. ¶¶ 25, 40, 45.)  During Plaintiff's approximately nine-week tenure, he worked 127.75 hours of overtime, a number that far exceeded his colleagues' overtime billing.  (Id. ¶¶ 26, 36.)

Silberman, Caballaro and Howard Novick, a Synagogue trustee, met with Plaintiff on May 18, 2007 to discuss Plaintiff's excessive overtime.  (Id. ¶ 37.)  Novick ordered Plaintiff to stop working overtime and to begin punching in and out at lunchtime so that the Synagogue could verify that Plaintiff was working when he was supposed to be.  (Id. ¶ 39.)  The Synagogue's only other African-American custodian did not have to punch out for lunch because Defendant was not concerned that this custodian was abusing overtime.  (Id. ¶ 43.)

Plaintiff was fired on May 31, 2007.  According to

3

Defendant, Plaintiff could not complete his assignments in an efficient and timely manner, abused the overtime rules, and exhibited poor judgment by remaining in the Synagogue building until 3 a.m. (See Def. 56.1 Stmt. ¶¶ 45-46.)

On October 24, 2007, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination, in which he alleged that his termination was the result of unlawful racial discrimination. (See Def. Ex. C.) Specifically, Plaintiff alleged that the Synagogue fired its only three black employees and replaced them with "Spanish guys." (Id.) Plaintiff also claimed that he was treated differently than his Hispanic colleagues in that he was required to punch in and out for lunch. (Id.)

At his deposition, Plaintiff admitted that neither Silberman nor Novick said anything racially derogatory toward him. (Def. 56.1 Stmt. ¶ 53.) And, Plaintiff testified that although Caballaro's habit of speaking to other custodians in Spanish was rude, Caballaro never said anything rude to him or racially derogatory to him or the other black custodians. (Id. ¶¶ 49, 51.) Plaintiff also admitted that during his tenure at the Synagogue he did not complain to anyone about racial discrimination. Instead, he first complained of discrimination

4

after he was fired. (Id. ¶¶ 60-61.)

DISCUSSION

Plaintiff asserts three claims: that he was (1) unlawfully terminated; (2) unlawfully subjected to unequal terms and conditions of employment; and (3) retaliated against. Plaintiff's Complaint contains few factual allegations, but his July 29, 2009 "Supplemental Complaint" amplifies his position by, among other things, denying that his overtime was unauthorized, stating that two other black employees were fired for false or disingenuous reasons, and claiming that an unqualified Spanish employee kept his job despite several verbal warnings. See Docket Entry 9. These allegations are similar to those in the narrative statement portion of Plaintiff's EEOC Charge. See Docket Entry 33-3 at 3.

For the following reasons, Defendant is entitled to summary judgment.

I. Legal Standard

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering this question, the Court considers "the pleadings,

depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, __ F.3d __, 2011 WL 2149924, at *6 (2d Cir. May 31, 2011); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134. The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 257, 106 S. Ct. at 2514-15, 91 L. Ed. 2d at 218. "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319,

6

323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

When a party has appeared in an action, but has not opposed summary judgment, the moving party does not win by default. Instead, the Court must "examin[e] the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244 (2d Cir. 2004) (citation and internal quotation marks omitted). And "[i]f the evidence submitted in support of the summary judgment motion does not meet [Plaintiff's] burden of production, then summary judgment must be denied," even though the non-movant failed to oppose it. Id. (internal quotation marks omitted).

Courts are cautious in awarding an employer summary judgment in cases where its intent--i.e., its alleged discriminatory motive--is an issue. McLee, 109 F.3d at 135. Nevertheless, summary judgment is warranted where the plaintiff's case is wholly lacking in genuine questions of material fact. Id. As discussed below, this is one such case.

II. Application

The Court first addresses Plaintiff's unlawful

termination and unequal terms and conditions claims, and then considers his retaliation claim.

   A. Unlawful Termination & Unequal Terms and Conditions

   As to Plaintiff's unlawful termination and unequal terms and conditions claims, Plaintiff has failed to show that Defendant's nondiscriminatory reason for its actions was pre-textual. These claims are analyzed using the familiar burden-shifting framework first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 668 (1973). In this analysis, Plaintiff has the burden of establishing a prima facie case of discrimination, at which point the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its conduct. If Defendant can do so, the burden shifts back to Plaintiff to show that Defendant's proffered reason was simply a pre-text for unlawful discrimination. See Clayborne v. OCE Business Svcs., 381 Fed. Appx. 32, 33-34 (2d Cir. 2010).

   Defendant argues that Plaintiff has not even established a prima facie case of discrimination. The Court disagrees. Plaintiff's burden at the first level of McDonnell Douglas is "mimimal," and it requires him to show only that: (1) he was a member of a protected class; (2) he was qualified for

his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See, e.g., Wolf v. New York City Dept. of Educ., 708 F. Supp. 2d 327, 331 (S.D.N.Y. 2010). As Defendant concedes, Plaintiff satisfies the first three requirements: he self-identifies as black, he was minimally qualified for his position, and he was required to punch out for lunch and ultimately fired. Defendant argues that Plaintiff has not met the fourth requirement, but Plaintiff asserts that he and other black employees were fired and replaced with "Spanish guys," a point that Defendant does not dispute. (See Def. Ex. C, Plaintiff's EEOC Charge.) This is enough to satisfy the minimum showing required of Plaintiff at this stage. See Weiss v. LaSuisse, 260 F. Supp. 2d 644, 657 (S.D.N.Y. 2003) (Defendant's knowledge of plaintiff's race combined with plaintiff's being replaced with Caucasian worker was sufficient for prima facie showing of discrimination).

Having concluded that Plaintiff can establish a prima facie case, the Court looks to whether Defendant has articulated a legitimate, non-discriminatory motive for requiring him to punch out at lunch and for firing him. Defendant has done so. Plaintiff worked significantly more overtime hours than his

colleagues and his supervisor complained to the Synagogue president that Plaintiff spent too much time socializing and not enough time working. Based on this, Defendant concluded that Plaintiff could not accomplish his assigned work in a reasonable time. Defendant warned Plaintiff about his overtime excesses, instituted the lunchtime punch-out requirement to help monitor his efficiency, and eventually fired him because he was inefficient and because he demonstrated poor judgment by remaining in the building into the early morning hours. These were legitimate, non-discriminatory reasons for Defendant's actions. Nieves v. Angelo, Gordon & Co., 341 Fed. Appx. 676, 679 (2d Cir. 2009) (in age discrimination suit, employer who terminated employee in part for failure to complete assigned tasks had a non-discriminatory reason for its action); see also Romero v. Howard Johnson Plaza Hotel, No. 97-CV-3706, 1999 WL 777915, at *8 (S.D.N.Y. 1999) (employee's failure to complete task properly and her relaxing instead of working were non-discriminatory reasons for adverse employment action).

It now becomes Plaintiff's burden to show that Defendant's proffered reasons were merely a pretext for unlawful discrimination. Plaintiff cannot do so here. Having not countered Defendant's Local Rule 56.1 Statement, Plaintiff

admits Defendant's version of events, at least insofar as it is supported by admissible evidence. See supra at 2. As discussed already, the facts show that Defendant believed Plaintiff was an inefficient, irresponsible employee. In response to Plaintiff's perceived shortcomings, Defendant required Plaintiff to punch out at lunchtime and eventually fired him. In Defendant's eyes, Plaintiff socialized when he should have been working, had trouble completing his assignments on time, and accrued an excessive amount of overtime.

There is no evidence in this case showing that Defendant's actions were motivated by bias. Plaintiff even testified that none of the key players in this saga--Caballaro, Silberman and Novick--ever said anything racially derogatory towards him. Ultimately, Plaintiff is left with just the allegations in his EEOC Charge and his Supplemental Complaint, including that: his overtime was authorized; the new Spanish supervisor only hired Spanish workers; that a Spanish employee was an ineffective worker yet still kept his job; and that two other black employees were fired without cause. Plaintiff has not supported any of these allegations with evidence, however, and unsupported allegations are insufficient to create issues of fact for trial. Weinstock, 224 F.3d at 41. Accordingly,

Defendant is entitled to summary judgment on these claims.

B. Retaliation

Plaintiff also checked the "retaliation" box on the Eastern District's form Title VII complaint. Defendant is entitled to summary judgment on this claim as well. Setting aside whether Plaintiff exhausted his administrative remedies as to this claim prior to filing suit, as he was required to do, Plaintiff simply cannot make out a prima facie retaliation case.

A Plaintiff alleging retaliation must prove "(1) [he] was engaged in a protected activity; (2) [his] employer was aware of that activity; (3) [he] suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse employment action." Martin v. MTA Bridges & Tunnels, 610 F. Supp. 2d 238, 254 (S.D.N.Y. 2009). Here, the evidence refutes the idea that Plaintiff engaged in any protected activity that could have prompted his dismissal. Plaintiff admitted that he never complained to his supervisors about racial discrimination while he was working for the Synagogue; he testified instead that he only complained of discrimination after he was fired. (See Def. Ex. D at 118–120, 124-125.) Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of the Court is directed to mail Plaintiff a copy of this Order and to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   July  12 , 2011
         Central Islip, New York